**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| ESSEX INSURANCE COMPANY, § | |
| § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | NO. 3:08-CV-1078-AH |
| § | |
| DAVID A. DAVIS, INDIVIDUALLY, § | |
| AND D/B/A APEX ROOFING & § | |
| CONSTRUCTION § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the written consent of the parties to proceed before a United States Magistrate Judge, and the District Court's transfer order filed on November 13, 2008, in accordance with the provisions of 28 U.S.C. § 636(c), came on to be considered Plaintiff's motion for final summary judgment, and the court finds and orders as follows:

*Background and Procedural History:*

On December 15, 2003, Tiferet Israel Congregation (TIC) contracted with APEX to remove the existing tar and gravel roof and install a new roof at the TIC synagogue. (Pl. App. 00090-91). The contract ("contract # 1") had a stated price of $98,648.00, and provided for a three-year labor warranty and fifteen-year manufacturer's warranty. (Pl. App. 00091). Installation of the new roof was completed on January 21, 2004, and TIC paid APEX the $98,648 stated contract price. (Pl. App. 00091). In February 2004, TIC discovered the new roof was not draining properly, causing standing water to accumulate on the roof. (Pl. App. 00091).

TIC notified APEX of the problem, and on March 10, 2004, David A. Davis inspected

the roof and informed TIC that the drainage problem could be solved by adjusting the scuppers.[1] (Pl. App. 00091).  An agreement (contract # 2) was entered into the same day, whereby APEX would adjust the scuppers for an additional payment of $920.00.  (Pl. App. 00091).  On March 18, 2004, APEX completed adjustment of the scuppers and TIC paid APEX the stated contract price of $920.00.  (Pl. App. 00092).  The roof leaks continued through April and May 2004, during which time TIC notified APEX and APEX sent workers to perform repairs.  (Pl. App. 00092).  In August 2004, TIC met with Davis and requested that APEX fix the persistent leaks.  (Pl. App. 00092).  APEX contacted the manufacturer of the roofing product, and a representative of the manufacturer inspected the roof and determined the leaks were caused by APEX's deficient installation as opposed to any defects in the roofing products.  (Pl. App. 00092).

On September 27, 2004, APEX installed an additional one-inch layer of roofing materials in an attempt to stop the leaks; however, the roof continued to leak.  (Pl. App. 00092).  In October 2004, TIC continued to request that APEX honor its warranty and contract terms and fix the leaks.  (Pl. App. 00092).  Eventually, TIC hired a new company and various contractors to repair the roof and remedy the water damage that occurred inside the synagogue as a result of the leaks, leading to an additional cost of $72,083.05.  (Pl. App. 00092-93).

TIC filed suit against David A. Davis, individually and doing business as APEX Roofing & Construction, in Dallas County Court at Law # 3 (hereinafter "the state court action"), in February 2008.  (Pl. App. 00089-97).  TIC sought liquidated damages in the amount of $72,083.05 to cover roof replacement costs and water damage repairs, as well as attorneys' fees.

---

[1] Scuppers are "an opening in the wall of a building through which water can drain from a floor or flat roof."  Merriam-Webster's Online Dictionary, accessed July 6, 2009, available at: http://www.merriam-webster.com/dictionary/scuppers.

(Pl. App. 00096). TIC's alleged causes of action include claims based on breach of contract, violations of the Texas Deceptive Trade Practices Act, promissory estoppel, and negligence.

Essex insured David A. Davis pursuant to the terms of Commercial General Liability Policy Number 3CK1551, issued by Essex to APEX, for a twelve-month term with effective dates of April 29, 2003 - April 29, 2004 and Policy Number 3CK1606, with effective dates of April 29, 2004 - April 29, 2005. (Pl. App. 00001-00041, 00042-00088). The business description for the policies is listed as "residential roofing". (Pl. App. 00001, 00042). Both contracts include a "breach of contract exclusion."[2] (Pl. App. 00014, 00059).

Essex filed its Complaint for Declaratory Relief on June 26, 2008. (Doc. 1). On November 13, 2008, the parties consented to proceed before a U.S. Magistrate Judge. On March 26, 2008, Essex filed its Motion for Summary Judgment. (Doc. 16). Davis filed his response on May 22,2009, (Doc. 21), and Essex filed its reply on June 2, 2009. (Doc. 22).

*Summary Judgment Standard*:

A party may move for summary judgment in the party's favor at any time. Fed. R. Civ. P. 56(b). To prevail on a motion for summary judgment, the moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986).

---

[2]To wit: "This insurance does not apply to claims for breach of contract, whether express or oral, nor claims for breach of an implied in law or implied in fact contract, whether "bodily injury," "property damage," "advertising injury," "personal injury" or an "occurrence" or damages of any type is alleged; this exclusion also applies to any additional insureds under this policy. Furthermore, no obligation to defend will arise or be provided by us for such excluded claims."

The materiality of facts is determined by substantive law. *Anderson*, 477 U.S. at 248. "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994). If the moving party presents evidence tending to show the absence of any genuine issue of fact, the opposing party must then identify specific evidence in the record which establishes the existence of one or more issues of fact, i.e. a non-movant may not merely rely on his or her pleadings. *See Anderson*, 477 U.S. at 256-57; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). In addition, neither conclusory allegations nor hearsay statements are competent evidence sufficient to defeat a motion for summary judgment. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S. Ct. 82 (1992). In analyzing the competent evidence proffered by the parties, the facts and the inferences to be drawn are viewed in the light most favorable to the non-movants. *See Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 97 (5th Cir. 1993); *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989). Because Essex Insurance Company bears the burden of proving the propriety of its claim that Essex owes no duty to defend and/or indemnify APEX against TIC's claims, to obtain summary judgment it must establish the absence of any genuine issue of material fact.

   *Findings and Recommendation*:

   Plaintiff Essex asserts several arguments in support of its motion. Essex argues that the policies issued to Davis provide no coverage for claims based on work performed outside the scope of work identified in the policies, and that Apex's work on a synagogue was outside the scope of the "residential" policies issued to Davis. Additionally, they argue the policies provide no coverage for operations involving a tar roof, no coverage for claims based on deficient work,

no coverage for claims based on defective product, and no coverage for TIC's legal causes of action such as breach of contract, DTPA / promissory estoppel, and negligence.  Defendant Davis argues the work on the synagogue was not outside the scope of work identified in the policies issued to Davis.  Additionally, Defendant argues the roof was not a "tar and gravel" roof, that the policies do provide coverage for claims based on deficient work and defective product, and that Davis' claims are at least potentially covered by the insurance policies.

An insurer's duty to defend is determined by the "eight corners" or "complaint allegation rule."  The rule was reiterated by the Texas Supreme Court in *King v. Dallas Fire Insurance Co.*, 85 S.W.3d 185, 187 (Texas 2002), in which the court observed that "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured.  But we resolve all doubts regarding the duty to defend in favor of the duty."  The third party plaintiff's pleadings are reviewed "without regard to the truth or falsity" of the third party's allegations, and  "only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex.2006).  "The insured bears the initial burden of establishing that a claim against it is potentially within the policy's coverage." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (applying Texas law).  If the claimant's factual allegations potentially support a covered claim, the insurer must defend its insured.  *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc*., 939 S.W.2d 139, 141 (Tex.1997).  However, if the petition only alleges facts that are clearly excluded under the policy, the insurer is not required to defend.  *Northfield,* 363 F.3d at 528.

Each policy describes APEX's business as residential roofing.  (Pl. App. at 00001 and

5

00009, and at 00042-43).  In addition each policy contains a Classification Limitation Endorsement M/E-030 which provides that "The coverage provided by this policy applies only to those operations specified in the application for insurance on file ... and described under the 'description' or 'classification' on the declarations of the policy."  (Pl. App. at 00015 and 00060).

Texas insurance law interprets insurance policies according to the rules of construction that apply to contracts generally. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995).  The term "residential" is not defined in the insurance policies between Essex and Apex, nor is it listed among the definitions provided in the policies. (Pl. App. 00038-41, 00085-88).  "Terms that are not defined in a policy are given their generally accepted or commonly understood meaning." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007); *W. Reserve Life Ins. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554, 557 (Tex.1953).

"Residence" has been commonly understood to mean " the place where one actually lives as distinguished from one's domicile or a place of temporary sojourn".[3]  Synagogue has been commonly understood to mean "a Jewish congregation; or "the house of worship and communal center of a Jewish congregation".[4]  While Defendant states that he "would show that these policies were purchased and paid for specifically to provide coverage on the TIC job", and asserts that Plaintiff was aware that Apex intended the policies to cover the TIC job, he has

---

[3] See Merriam-Webster Online Dictionary, "residence."  03 August 2009, http://www.merriam-webster.com/dictionary/residence.

[4] See Merriam-Webster Online Dictionary, "synagogue."  03 August 2009, http://www.merriam-webster.com/dictionary/synagogue.

failed to present any competent evidence to support such assertions nor has the court found in the summary judgment record or the policies any indication that a "residential" policy was intended to cover work on the roof of the TIC synagogue. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas, supra*, 136 F.3d at 458. Defendant has failed to identify such evidence. The court finds that Apex's work on the synagogue was outside the scope of the residential insurance policy issued by Essex. It is therefore unnecessary to address the remaining arguments made by Essex which would be relevant only were the court to find that work on the synagogue was within the scope of the policy.

**IT IS THEREFORE ORDERED** that Essex Insurance Company's motion for summary judgment is granted.

Signed this 7th day of August, 2009.

*Wm. F. Sanderson, Jr.*
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE